U.S. DISTRICT COURT
DISTRICT OF COLUMBIA

UNITED STATES OF AMERICA :

:

vs. : Case No.: 1:22-mj-00122-RMM

JONATHAN WILLIS

:

DEFENDANT

:

**JONATHAN WILLIS'S MEMORANDUM IN SUPPORT OF PRETRIAL RELEASE**

COMES NOW Jonathan Willis, and through his attorney, James N. Papirmeister, Esq., of the Law Offices of James N. Papirmeister, P.C., and hereby submits this Memorandum in support of Mr. Willis's Pretrial Release on suitable conditions in this case, and in support thereof, states as follows.

THE ANALYTICAL FRAMEWORK

The presumption of detention created by the Child Enticement charge here notwithstanding, there also remains a presumption of innocence in applying the analytical framework of 18 U.S.C. § 3142. "**(j) Presumption of innocence.** Nothing in this section shall be construed as modifying or limiting the presumption of innocence" 18 U.S.C. § 3142 (j). Liberty in the form of pretrial release, should be granted when the Government cannot specifically articulate why Mr. Willis would likely re-offend or violate appropriate pretrial conditions of release.

Guidance on the shifting of the burdens, and the application of the four factors of analysis in § 3142 has been elucidated in this Circuit recently in one of the oft-quoted "January 6" cases:

> In our society liberty is the norm, and detention prior to trial or without trial is the carefully limited exception." *United States v. Salerno*, 481 U.S. 739, 755, 107 S.

> Ct. 2095, 95 L. Ed. 2d 697 (1987). The Bail Reform Act of 1984 authorizes one of those carefully limited exceptions by providing that the court "shall order" a defendant detained before trial if it "finds that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community." 18 U.S.C. § 3142(e). "**In common parlance, the relevant inquiry is whether the defendant is a 'flight risk' or a 'danger to the community**.'" *United States v. Vasquez-Benitez*, 919 F.3d 546, 550, 440 U.S. App. D.C. 122 (D.C. Cir. 2019). Here, the District Court held that both Munchel and Eisenhart should be detained on the basis of dangerousness.
>
> In assessing whether pretrial detention is warranted for dangerousness, the district court considers four statutory factors: (1) "the nature and circumstances of the offense charged," (2) "the weight of the evidence against the person," (3) "the history and characteristics of the person," and (4) "the nature and seriousness of the danger to any person or the community that would be posed by the person's release." 18 U.S.C. § 3142(g)(1)-(4). To justify detention on the basis of dangerousness, the government must prove by "clear and convincing evidence" that "no condition or combination of conditions will reasonably assure the safety of any other person and the community." *Id.* § 3142(f). **Thus, a defendant's detention based on dangerousness accords with due process only insofar as the district court determines that the defendant's history, characteristics, and alleged criminal conduct make clear that he or she poses a concrete, prospective threat to public safety.**
>
> In *Salerno*, the Supreme Court rejected a challenge to this preventive detention scheme as repugnant to due process and the presumption of innocence, holding that **"[w]hen the Government proves by clear and convincing evidence that an arrestee *presents an identified and articulable threat* to an individual or the community, we believe that, consistent with the Due Process Clause, a court may disable the arrestee *from executing that threat*.**" 481 U.S. at 751 (emphasis added).

United States v. Munchel, 451 U.S. App. D.C. 294, 300-02, 991 F.3d 1273, 1279-80 (2021), emphasis supplied. Moreover, the threat must be clearly identified.

> **The crux of the constitutional justification for preventive detention** under the Bail Reform Act is that "[w]hen the Government proves by clear and convincing evidence that an arrestee presents an identified and articulable threat to an individual or the community, . . . a court may disable the arrestee from executing that threat." *Salerno*, 481 U.S. at 751. Therefore, **to order a defendant preventatively detained, a court must identify an articulable threat posed by the defendant to an individual or the community**. The threat need not be of physical violence, and may extend to "non-physical harms such as corrupting a

> union." *United States v. King*, 849 F.2d 485, 487 n.2 (11th Cir. 1988) (quoting S. REP. NO. 98-225, at 3 (1984), *as reprinted in* 1984 U.S.C.C.A.N. 3182, 3195-96). **But it must be clearly identified**.

United States v. Munchel, 451 U.S. App. D.C. 294, 303-04, 991 F.3d 1273, 1282-83 (2021), emphasis supplied.

While the burden of production to rebut a presumption of dangerousness rests with a defendant, the ultimate burden of persuasion rests on the government.

> In reviewing Judge Wicks' detention order, this Court must determine whether, as relevant here, the Government has demonstrated by clear and convincing evidence that no condition or combination of conditions will reasonably assure the safety of any other person and the community. *United States v. Reiner, 468 F. Supp. 2d 393, 396 (E.D.N.Y. 2006)*. Charges involving the possession and production of child pornography give rise to a statutory presumption that no such conditions exist. *See 18 U.S.C. § 3142(e)(3)(B)*. That provision creates only a "'limited burden of production,' under *§ 3142(e)(3)* of the *Bail Reform Act* to rebut the presumption of detention." *United States v. Deutsch, 822 F. App'x 35, 36 (2d Cir. 2020)* (quoting *United States v. Mattis, 963 F.3d 285, 290 (2d Cir. 2020)*). As the Second Circuit recently observed: This presumption may be rebutted by the defendant, who "bears a limited burden of production . . . by coming forward with evidence that he does not pose a danger to the community." *United States v. Mercedes, 254 F.3d 433, 436 (2d Cir. 2001)*. "Once a defendant has met his burden of production . . . the presumption favoring detention does not disappear entirely, but remains a factor to be considered among those weighed by the district court. **Even in a presumption case, the government retains the ultimate burden of persuasion by clear and convincing evidence that the defendant presents a danger to the community**." *Id. United States v. Mattis, 963 F.3d 285, 290-91 (2d Cir. 2020).*

United States v. Blackman, 2022 U.S. Dist. LEXIS 51185, pp. 6-7 (East. Dist. New York, 2022), emphasis supplied. Stated differently, "[a]lthough the burden of production may shift, the burden of persuasion remains with the government throughout." United States v. Brown, 538 F. Supp. 3d 154, 164 (D.C. 2021).

While Munchel, *supra*, was a "January 6" case, and neither a sex offense, nor a statutory presumption case, its principles apply even in statutory presumption cases. United States v. Dolan, No. 21-8212-BER, 2021 U.S. Dist. LEXIS 105815, at *5-6 (S.D. Fla. June 6, 2021). Moreover, only a limited number of persons should ultimately be denied release altogether.

> "**In applying the factors to any particular case, the court should bear in mind that it is only a 'limited group of offenders' who should be denied bail pending trial**." *United*

> *States v. Shakur, 817 F.2d 189, 195 (2d Cir. 1987)*; *United States v. Valerio, 9 F. Supp. 3d 283, 288 (E.D.N.Y. 2014)*. At the same time, "[a] district court is instructed to order the pre-trial detention of a defendant if, after a hearing, the judge 'finds that no condition or combination of conditions will reasonably assure the safety of any other person and the community.'" *Mattis, 963 F.3d at 290* (quoting *18 U.S.C. § 3142(e)(1)*).

Blackman, *supra.*, at 7, emphasis supplied.

ANALYSIS OF THE FOUR FACTORS

**1) The Nature and Circumstances of the Offense Charged**

Fully recognizing that the Government's allegations in this case allege that Mr. Willis tried several times to arrange a live encounter with the alleged victim, such an encounter fortunately never materialized. Also recognizing the danger presented by such alleged attempts by Mr. Willis, the fact that there never was any physical contact is still an important factor in the pretrial release determination.

> Counsel points to Judge Block's decision in *United States v. Deutsch, No. 18-cr-502, 2018 U.S. Dist. LEXIS 210485, 2018 WL 6573321, at *1 (E.D.N.Y. Dec. 13, 2018)* for the proposition that electronic predators do not present a danger to the community. In that case, Judge Block drew a distinction between cyber predation and the physical molestation of children to produce child pornography, noting: **while Deutsch's charged conduct is deplorable, and the potential number of victims staggering, the conduct is alleged to have taken place solely through Internet communication with minors he found online. Deutsch is not accused of coming into any physical contact with children or facilitating such contact by others. . . . Embracing the government's argument in this case would amount to setting a *de facto* rule that anyone charged with similar conduct must be held in pretrial detention. *Id. 2018 U.S. Dist. LEXIS 210485, [WL] at *2*.**

Blackman, *supra*, at 14-15, emphasis supplied. Despite these points, Defendant Blackman's appeal of the Magistrate Judge's denial of release was upheld because of additional facts about his conduct pre and post-arrest were revealed, that are not present in our case.

> These include the nature of the underlying charges, the apparent strength of the evidence, the defendant's apparent admission to electronic cyberstalking of children in aid of the production of child pornography, defendant's possession of a collection of thousands of pornographic images and videos (including child pornography and bestiality), the concealment of the device containing these images from his family and the uncertainty surrounding the Internet accessible devices in defendant's residence, including the missing Apple watch.

*Id*., at 16-17.

The alleged offense conduct here consists of chat messages purportedly between Mr. Willis and the alleged victim from April 6, to April 12, 2022, a six-day period. [Government's Detention Memorandum, Factual Background, paragraph 6]. Then an undercover officer assumes the identity of the alleged victim and engages in further chats, purportedly with Mr. Willis, on May 11, 12, and 24, 2022. [*Id*., paragraphs 13-15]. The Government then alleges, without specifying the dates, frequency, number of messages, or the content thereof, that Mr. Willis reportedly continued to message the alleged victim up until June 9, 2022. [*Id*., Argument, Section A]. Put succinctly, the alleged offense conduct was short-lived and of very recent origin, commencing in April, 2022.

**2) The Weight of the Evidence Against the Person**.

No doubt, the transcript of the alleged communications between Mr. Willis and the alleged victim, reproduced in the Government's memorandum for detention is concerning. At this point in the Government's case, however, there is not only a lack of any history by Mr. Willis of this sort of behavior, there is but one alleged victim. There is no evidence of Mr. Willis's involvement in any inappropriate conduct with respect to any other minors. Mr. Willis's arrest is based on a complaint entailing the same transcript of communications as set forth in the Government's detention memorandum. [ECF 1- Attachment, Statement of Facts]. There is no Indictment at this point in time. If there were, this would be a factor in the determination of probable cause and the weight of the evidence. United States v. Fenn, 2016 U.S. Dist. LEXIS 51215, pp. 4-5; United States v. Hite, 76 F.Supp. 3d 33, 36, n. 4 (D.D.C. 2014).

Some Courts have held that this second factor [weight of the evidence] should be accorded the least weight of the four statutory factors. In a case involving another statutory presumption charge,

Travel with Intent to Engage in Illicit Sexual Conduct with a Minor, this point was stated as such, in the appeal of a U.S. Magistrate's Order of Detention.

> As to the second factor, the Ninth Circuit held **"the weight of the evidence is the least important of the various factors"** to be considered by the Court. *United States v. Motamedi*, 767 F.2d 1403, 1408 (9th Cir. 1985). Nevertheless, the weight of the evidence against the person remains a factor as the statute requires that the Court consider the evidence against the person. The Ninth Circuit has not held the second factor is not important or not to be considered at all. Instead, it is among the § 3142(g) factors to be considered although the other factors are more important. In this case, the defense argues the Government's motion for detention is based entirely on this factor.
>
> The Government has shown the weight of the evidence against Mr. Howell in this case is strong. (Dkt. 1, 19.) The investigative evidence, Affidavit in support of probable cause and attached materials, and Mr. Howell's own statements to law enforcement all go to support this factor weighing in favor of detention. On this point, **the Court makes no assumption that Mr. Howell would be convicted of the charge and presumes him to be innocent. As is appropriate, the Court gives the least weight to this factor in this case but notes the weight of the evidence against Mr. Howell is considerable.**

United States v. Howell, No. 2:17-mj-09855-EJL, 2017 U.S. Dist. LEXIS 166129, at *6-8 (D. Idaho Oct. 3, 2017), emphasis supplied. In or case, the Government presents no evidence of any admission or statement to law enforcement by Mr. Willis. Nor does the Government present any evidence of prior instances of inappropriate involvement or interest in minors by Mr. Willis.

**3) The History and Characteristics of the Person**

In Fenn, *supra*, Judge James C. Cacheris granted Fenn's conditional release pending retrial, despite Fenn being convicted of Receipt of Child Pornography (a statutory presumption charge), his being sentenced to 120 months, his having two New Trial Motions denied, and the affirmance on appeal of his conviction. Fenn, at 2. Fenn later prevailed on an ineffective assistance of counsel claim, that resulted in his conviction and sentence being vacated. *Id*. Despite defense evidence casting some doubt certain parts of the Government's case, Judge Cacheris still found the weight of the

evidence sufficient to establish probable cause Fenn committed the offense. Fenn, at 2. Despite finding in favor of detention as to factors one and two, however, Judge Cacheris granted Fenn's release pretrial.

> None-the-less, Fenn has rebutted the presumption that detention is necessary. The procedural posture of this case allows the Court to rely on Fenn's prior compliance with conditions of release as compelling evidence that there are conditions that will reasonably assure his presence at trial and eliminate the risk of harm. *See Hite*, 76 F. Supp. 3d at 42 (finding presumption rebutted namely because defendant previously complied with conditions of release on same charges). Furthermore, Fenn's mother, Catherine Norris ("Norris"), testified at the detention hearing that she is willing and able to serve as a third-party custodian. The Court found Norris credible based on her detention-hearing testimony and her effective custodianship during Fenn's prior release on bond. The Court finds additional support that appropriate conditions of release exist because of Fenn's ties to the community, his lack of criminal history, his stable psychological history, his meager financial resources, and the unlikelihood of additional harm resulting to others or the community.

United States v. Fenn, No. 1:12-cr-510, 2016 U.S. Dist. LEXIS 51215, at *5-6 (E.D. Va. Apr. 15, 2016).

The History and Characteristics of Jonathan Willis

Jonathan Willis is 36 years old and is currently confined in the DC Jail, with limited contact with other inmates and very limited time outside of his cell. He is allowed out of his cell up to one hour a day during the weekdays only. Of the 168 hours in a week, he is confined to his solitary DC Jail cell for 163 of 168 hours a week. He has been placed in "Protective Custody" due to his reports to officials at the jail that he does not feel safe. This counsel visited Mr. Willis at the facility last Thursday. While he reports no suicidal ideation, he was crying several times throughout our two-and-a-half-hour visit. To this counsel, Mr. Willis appeared somewhat timid and sensitive, but certainly polite, soft-spoken, and appreciative of the human contact.

Jonathan Willis has absolutely no prior contacts with the justice system in his life. He has no history of substance abuse, or of a mental health disorder. Personality-wise, Mr. Willis is regarded by colleagues and family members as respectful, pleasant, affable, helpful, and a moral person, who possesses a peaceful, and nonviolent disposition. [See attached Character References in **Exhibits 3 & 4**]. He has remained stable, and gainfully employed throughout his adult life, has held supervisory positions, and has no history of unusual associations or behavior, the recent allegations here notwithstanding. [*Id*.].

Jonathan's work history described in **Exhibit 2** consists of several positions around the country at esteemed country clubs and golf tournament venues as a Golf Caddy Manager and Supervisor with a company called CaddyMasters. He has an Occupational Associate's Degree from the Golf Academy of America, as well as a Certificate in Tournament Operations from the Academy in Orlando, Florida. His supervisor Dan Costello has known him for ten years and despite the allegations supports Jonathan's release. Jonathan would not be authorized to return to his job at Chevy Chase Country Club at this time, according to Mr. Costello. The positions Jonathan has held include stints at Tournament Players Club [TPC] at Sawgrass, Golf Club of Houston where President Bush is a member, caddying for a PGA Tour Professional, and his most recent position, supervising a staff of 60 at Chevy Chase Club, where many esteemed members of the federal judiciary, high government officials and corporate leaders are members. [*Id*.].

Mr. James "Jim" Willis and Mrs. Sherry Willis are Jonathan's parents who met in the 9th Grade in Kalamzoo, Michigan, are both age 64, and have been married for 42 years. They reside in a single-family home in Kalamazoo, Michigan. [**Exhibit 3**]. Jim is retired from "Industrial Sales" which he did for approximately 40 years. His last company was "Fabricated Flex Hose" for whom he worked for eleven years. He served numerous environmental and pharmaceutical companies such as

Pfizer, and some governmental contracts such as the City of Kalamzoo, coordinating the sales and transfer of large-scale hoses and plumbing fixtures for industrial use. Sherry Willis still works as an Interior Designer, having gone to a Design School after high school. [See **Exhibit 3**]. Sherry works mostly from home, but does occasionally need to visit on-site for some clients. Both Jim and Sherry Willis are approved Third-Party Custodians for Jonathan, according to the report from Pretrial Services.

Jonathan is an only-child. He is very close with his parents, as well as being close with several of his parents' siblings, who are his aunts and uncles. He was also close with his maternal grandmother who passed away in December, 2020, just about the same time he took his managerial position at the Chevy Chase Club. [See family biography in **Exhibit 3** along with pictures of Jonathan and his parents, with his wheelchair bound grandmother, and several of his aunts and uncles].

**4) The nature and seriousness of the danger to any person or the community that would be posed by the person's release**

Sherry and Jim have a nice Michigan home they own outright, having paid the mortgage in full over the last thirty-eight (38) years they have owned and occupied the home. [**Exhibit 3**]. Jonathan Willis was raised from his birth in this home, and it is the only family home he has ever known.

Jim and Sherry Willis have traveled down from Michigan by car this past Friday and are currently staying at Jonathan's apartment in Bethesda, Maryland. They are ready and willing to assume immediate custody of their son Jonathan upon his release. While returning to Michigan with Jonathan is preferred, both Sherry and Jim are nevertheless prepared to stay in Jonathan's apartment in Bethesda, Maryland and live with him until the conclusion of this case. The apartment has an upstairs loft with a sleep sofa and they are willing to assume immediate residence there, to support Jonathan and serve as his third-party custodians and round-the-clock supervisors. [See **Exhibit 5** for

current lease and pictures of Jonathan Willis's Bethesda apartment]. At least one of them would be home with Jonathan all the time, and usually both of them, if he is released into their custody. Moreover, one or both of them are willing to accompany Jonathan for any departure from his home for any medical, legal or counseling appointment preauthorized by Pretrial Services.

James and Sherry Willis would jointly be willing to post their home in Michigan as collateral to ensure Jonathan's appearance in court.

Secondly, Jonathan can be ordered to submit to electronic home detention and/or GPS monitoring through Pretrial Services, with permission to leave his residence only for medical and legal reasons, and only with the approval and pre-authorization of the Pretrial Services Department [PTS]. PTS would know almost immediately if Jonathan deviated from this rigid and restrictive constraint on his movements. He can also be subject to a 24-hour curfew and would avoid working outside the home during this period of pretrial supervision.

Thirdly, this counsel has possession of Jonathan's passport which is valid through February 2028 and this counsel will bring that passport to the Detention Hearing for surrender to Pretrial Services or the Court as directed.

Fourth, Jonathan and his parents would all be willing to consent to monitoring software being installed on all internet-capable electronics in the apartment, including the laptops Sherry and Jim brought with them from Michigan. They would all agree to directly supervise Jonathan's use of any internet capable devices, and limit his use only to bill-paying, communicating with this counsel, pretrial services and the Court, and for his sex offense evaluation and counseling, [see *infra*], and only in the open areas of the apartment.

Fifth, this counsel has already retained Dr. Ronald I. Weiner, Ph.D., a clinical member of the Association for the Treatment of Sexual Abusers [ATSA], who has specialized for over thirty-five

years, in the evaluation and treatment of sexual offenders and persons charged with sexual offenses. Dr. Weiner has been contracted to the United States Probation Office for many years to conduct Psychosexual Evaluations and Risk Assessments, and has also been requested to perform these services at the behest of several federal and state-court judges in the Washington DC, metropolitan area. [See **Exhibit 1**].

Dr. Weiner's evaluations are comprehensive and usually take 30 to 40 hours of time to complete over several months. He will have Mr. Willis submit to multiple interviews and a battery of psychological, psychosocial, and psychosexual tests and risk assessment instruments. He will communicate with Mr. Willis on a secure platform known as "BlueJeans" and Mr. Willis can participate with Dr. Weiner on a computer from this counsel's office suite, for each of the numerous interviews in a private and secure office in the suite under this counsel's supervision, all with the advance notice to, and preapproval from, the Pretrial Services Department.

Dr. Weiner indicates that he cannot effectively conduct his extensive evaluation of Jonathan while Jonathan is confined in the DC Jail. [*Id.*]. Moreover, this counsel's experience in handling sex offense cases federally and in state court, has shown that the results achieved in comprehensive psychosexual evaluations and risk assessments, have proven invaluable in resolving cases, and are integral to preparation of the defense and to mitigation. It is also integral in informing the Court and other criminal justice entities, such as the probation office and Bureau of Prisons, as to appropriate dispositions, services and placements in such cases.

Sixth, Dr. Weiner has referred Jonathan to start weekly counseling at Clinical & Forensic Associates [CFA], at 801 Roeder Rd. Ste. 425 in Silver Spring, Maryland 20910. This is a private, ATSA certified sex offense counseling program, currently on contract with the United States Probation Department in the District of Columbia, with both the owner and clinical director, Dr.

Sandrine Hildembrand, Ph.D, as well as the Executive Director, Elizabeth Raeder-Freeland, being ATSA Clinical Members and the primary treatment providers. Executive Director Raeder-Freeland indicated that Mr. Willis can begin weekly therapy in approximately one week after his release. This weekly therapy would obviously start prior to receipt of Dr. Weiner's evaluation, and it will deal with Mr. Willis' current mental health needs and issues generated by the charges alleged against him. It will not as yet contain the full panoply of sex offense treatment until Dr. Weiner's evaluation and risk assessment report is received, which would typically contain numerous and specific treatment recommendations.

Seventh, Mr. Willis would be court-ordered to have no contact with the alleged victim, nor anyone in her family. Mr. Willis would also be court-ordered to have no contact with any minor females, or any minors as the court may direct.

The Pretrial Release report prepared by Ms. Holman indicates that Mr. Willis would be deemed low risk to reoffend at this point. Circumstantially, this would almost certainly have to be the case, in that Mr. Willis has already been charged with the indicated offenses, and with this legal matter pending against him and being under heavy pretrial supervision and restrictions, re-offending appears extremely unlikely. Dr. Weiner's extensive evaluative process, as well as weekly counseling with CFA, will both begin almost immediately upon Jonathan's release, which further makes recidivating at this point highly improbable. Unlike the case in Munchel, *supra*, one of the January 6, 2021 Bail Reform Act decisions, where "the District Court further determined that neither appellant was likely to be deterred by release conditions," 2021 U.S. Dist. LEXIS 29099, [WL] at *7,*8, United States v. Munchel, 451 U.S. App. D.C. 294, 300, 991 F.3d 1273, 1279 (2021), Mr. Willis is and will remain, greatly deterred from any recidivism under the circumstances of this case.

Despite the statutory presumption in favor of detention in this case, due to the nature of the charges, the statute still directs the Court impose "… the least restrictive further condition, or combination of conditions, that such judicial officer determines will reasonably assure the appearance of the person as required and the safety of any other person and the community, 18 U.S.C.S. § 3142 (c)(1)(B) (LexisNexis, Lexis Advance through Public Law 117-130, approved June 6, 2022).

We submit that the measures recommended in this Memorandum, more than adequately rebut the presumption of detention, as well as any risk of Mr. Willis's non-appearance at trial, and further outweigh and rebut the Government's attempt at showing clear and convincing evidence that Mr. Willis's release poses a danger to any person or the community. These measures and factors include:

1) Residing with Parents James and Sherry Willis in apartment in Bethesda, Maryland. [Parents have driven to this area from Michigan within last week specifically to assume custody over their son].
2) Parents are approved Third-Party Custodians by Pretrial Services Department.
3) Parents will post their single-family home in Michigan, which has no lien, which they have owned for thirty-eight years, as collateral.
4) Parents and Jonathan will cooperate with, and consent to monitoring software being installed on all internet-capable electronics in the apartment.
5) Parents will personally supervise all internet usage from the home by Jonathan, which is only to be authorized for bill-paying, counseling and communication with the Court or counsel.

6) Jonathan will cooperate with, and consent to electronic home detention and GPS monitoring.
7) Jonathan will abide by 24-hour-a-day curfew.
8) Jonathan will immediately begin comprehensive psychosexual risk assessment and evaluation by ATSA Clinical Member, Dr. Ronald I. Weiner, Ph.D.
9) Jonathan will immediately begin course of weekly counseling with Clinical & Forensic Associates, an ATSA Clinical Program, already under contract with the U.S. Probation Department.
10) Jonathan will abide by the condition of no contact with minors, nor the alleged victim's family members.
11) Jonathan will report as directed to the office of the Pretrial Services Department [PTS], and will only leave his house if accompanied by at least one of his parents, and only if preapproved by PTS, and only for medical, legal, or counseling purposes.
12) Jonathan will abstain from any alcohol and usage of drugs without a prescription.
13) Jonathan, through this counsel will surrender his passport on June 22, 2022.

A recent case in Maryland upheld a defendant's release on similar conditions as proposed here, despite the United States Magistrate Judge finding the defendant's alleged conduct with respect to minors "upsetting and revolting": "The evidence before the Court includes a written statement in which Mr. Thomas admitted abusing a friend's trust by exposing and videotaping her young daughter's genitalia while she slept. In addition, the Court has had the opportunity to view portions of that video. Finally, there were approximately 16,000 pornographic images of children found in Mr. Thomas's home on various storage devices. Therefore, the evidence against the defendant is strong and the second factor thus weighs heavily against the defendant."

United States v. Thomas, No. CCB-03-0150, 2006 U.S. Dist. LEXIS 3266, at 27-28 (D. Md. Jan. 13, 2006).

> In sum, the factors enunciated in the Bail Reform Act demonstrated that the conditions imposed concerning the release of the defendant in this case reasonably assured the safety of the community. The Court did not "roll the dice" by releasing Mr. Thomas under the proposed conditions, as the government has claimed. **It is imperative in such cases that courts evaluate the evidence presented and apply the law, rather than allowing natural revulsion to overcome objective analysis**. The Bail Reform Act requires a reasonable assurance, not a guarantee, of safety. United States v. Barnett, 986 F.Supp. 385, 400 (W.D. La. 1997). Moreover, the probability and consequences of the defendant's prospective acts must be balanced against the proposed immediate restraint on the defendant's liberty, as he is presumptively innocent. See 18 U.S.C. § 3142(j). Finally, the government failed to show by clear and convincing evidence that there was no combination of conditions that can reasonably assure the safety of the community. Therefore, while the Court imposed the conditions of release that it found reasonably assured the safety of the community, as specified by separate order, the government's motion for detention was denied.

United States v. Thomas, No. CCB-03-0150, 2006 U.S. Dist. LEXIS 3266, at *94-95 (D. Md. Jan. 13, 2006), emphasis supplied. The conditions of release imposed by U.S. Magistrate Gauvey, upheld on appeal with two additional conditions, were thus:

> ..., in addition to certain standard conditions, requiring the defendant to: (1) reside at the Connecticut home of his mother and step-father; (2) avoid all contact with the child in the video; (3) report to and obey the supervising officer as directed; (4) refrain from possessing a firearm, destructive device, or other dangerous weapon; (5) refrain from excessive use of alcohol and from any use of narcotics or controlled substances; (6) undergo appropriate medical, psychological, or psychiatric treatment; (7) submit to an electronic monitoring program, with the additional condition that he may not leave the residence to which he is restricted except for pre-approved attorney visits, court appearances, and medical and mental health treatment, during which he must be accompanied by one of his two third-party custodians; (8) have no direct contact with female children; (9) have no use of, or access to, a computer or any other device with internet access.

*Id*., which was modified on appeal by U.S.District Court Judge Catherine Blake:

> The release order of the undersigned specified, among other conditions, that the defendant was to have no direct contact with female children. The undersigned specifically exempted the six-year old grandson of defendant's mother, one of Mr. Thomas's third-party custodians, who frequently visits her home and is also defendant's nephew. On appeal, the Honorable Catherine C. Blake added a condition that also prohibited defendant from having any unsupervised contact with any persons under the age of eighteen. She also required that departures from the residence for the stated purposes be approved in advance by pretrial services.

United States v. Thomas, No. CCB-03-0150, 2006 U.S. Dist. LEXIS 3266, at *94-95 (D. Md. Jan. 13, 2006).

Another example in the D.C. Circuit involving the same charge as Mr. Willis is facing, occurred when Judge Lamberth upheld U.S. Magistrate Kay in the order granting pretrial release on similar conditions as in Thomas, and as proposed here.

> On February 21, 2012, Paul David Hite was arrested on the charge of attempted coercion and enticement of a minor in violation of 18 U.S.C. § 2422(b). Following a preliminary/detention hearing on February 29, 2012, Magistrate Judge Alan Kay, applying 18 U.S.C. § 3142, ordered that Dr. Hite be released into the community while he was awaiting trial. Order (Mar. 9, 2012), ECF No. [7]. As part of his pretrial conditions of release, Dr. Hite was ordered to 24-hour home confinement subject to supervision by Pretrial Services and subject to electronic and/or GPS monitoring. Dr. Hite's parents were required to serve as his custodians and live in the house with Dr. Hite. Dr. Hite was required to post a property bond through a lien on the entire equity of his house in Richmond, Virginia, worth $650,000. Dr. Hite also was ordered to stay away from all minor children, not access the internet, and not leave the Richmond, Virginia area, except to appear in Court. *Id*. The government appealed the release order which was affirmed in its entirety by then-Chief Judge Royce C. Lamberth. Memo. & Order (Mar. 9. 2012), ECF No. [6].

United States v. Hite, 76 F. Supp. 3d 33, 34-35 (D.D.C. 2014). (Dr. Hite was later convicted, received 240 months imprisonment, then his conviction was reversed on appeal due to erroneous jury instructions, and he was denied release pending retrial based solely on the likelihood of flight, rather than dangerousness).

The Government says there is no reason to believe that home confinement would substantially mitigate the danger posed here, given that Mr. Willis was living at home when the alleged offenses occurred. [Government's Detention Memorandum, Argument, paragraph D, last page]. This conclusory statement is without merit. Many factors would be substantially different if Mr. Willis were released under the proposed special conditions.

First of all, Mr. Willis has been arrested, charged and has been held in the DC Jail. In and of itself, this provides substantial deterrence for a man like Jonathan Willis who has never been incarcerated, nor charged with any criminal offense in his life. Secondly, being electronically monitored, with additional GPS monitoring, and being confined to his home with a 24-hour curfew, in the custody of both his parents, are a combination of conditions that are drastically different, and restrictive, in comparison to Mr. Willis's life before his arrest. PTS would electronically know if Mr. Willis left his residence or there was an alert on any electronics in his residence, from the monitoring software. Moreover, Mr. Willis's parents would likely know if any deviation from the pretrial restrictions was occurring, because at least one of them would at all times be home with him, in a one-bedroom apartment, watching him if he should use the computer. As his parents, this conservative couple has a strong incentive to not see their son violate any condition of release. They have not uprooted from their Michigan home on such short notice, to travel to Maryland to live with Mr. Willis, nor have they invested in privately retaining this counsel, to be negligent and let their guard down in supervising their son in these circumstances. He will be reporting to Pretrial Services regularly. He will start a lengthy evaluation with Dr. Weiner that will comprise many hours of interviews and testing. He will be attending weekly counseling sessions with Clinical & Forensic Associates.

Indeed, the circumstances of Mr. Willis being released pursuant to this host of restrictive conditions, will overwhelmingly mitigate any conceivable risk or danger to the community.

CONCLUSION

For all the foregoing reasons and those to be adduced at the Detention Hearing scheduled before this Court on June 22, 2022 at 3 pm, we submit there is **not** clear and convincing evidence that no conditions of release will reasonably assure Jonathan Willis's appearance in Court and the safety of any person and the community. Quite the contrary! We urge the Court to authorize Jonathan Willis's pretrial release, accordingly.

Respectfully submitted,

________/S/______________________
James N. Papirmeister, Esq.
Law Offices of James N Papirmeister, P.C.
8630 Fenton Street, Suite 320
Silver Spring, Maryland 20910
Offc (301) 589-2100; Cell (301) 367-6500
Fax (240) 444-8096
Email: criminalfirm@yahoo.com
DC Bar #421-366

CERTIFICATE OF ELECTRONIC SERVICE

This Memorandum in Support of Pretrial Release was filed on ECF this 21st day of June, 2022 and copies were electronically served on the Government.

___________/S/__________
James N. Papirmeister