U.S. DISTRICT COURT
DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | |
| vs. | : | Case No.: 1:22-mj-00122-RMM |
| JONATHAN WILLIS | : | |
| DEFENDANT | : | |

**SUPPLEMENT TO JONATHAN WILLIS'S MEMORANDUM IN SUPPORT OF PRETRIAL RELEASE**

COMES NOW Jonathan Willis, and through his attorney, James N. Papirmeister, Esq., of the Law Offices of James N. Papirmeister, P.C., and hereby submits this Supplemental Memorandum in support of Mr. Willis's Pretrial Release on suitable conditions in this case, and in support thereof, states as follows.

IN APPLYING THE FOUR FACTORS, THIS CASE IS DIFFERENT FROM GLOVER

After this Court's reference yesterday to the recent case of United States v. Glover, No 21-mj-609, this counsel desires to compare and contrast that case with what we submit is a very different type of case for Jonathan Willis. Reference to Chief Judge Beryl A. Howell's twelve-page Order of Detention in Glover, including her Honor's eight-page "Attachment to Order of Detention Pending Trial," will be made by "Howell, p. X", with references to the ECF page numbers at the top of Document 23 in that case [all of which is included herewith as **Exhibit 1**].

Judge Howell's analysis of factor 1 in Glover, "Nature and Circumstances of the Offense" reveals startling allegations that are simply non-existent in our case:

1

1. Upon entry to Glover's residence by agents at 6 am to execute a search warrant, the naked Glover had his computer on revealing an online video conference in progress with other men masturbating to two 'disturbing' child pornography videos displayed on Glover's computer. <u>Howell</u>, p. 6.

2. One video displayed an adult male putting his erect penis on and around an infant's mouth, and the other video displayed an adult male penetrating an infant's vagina. *Id*.

3. Glover waived Miranda and admitted to watching child pornography through mobile applications, such as "Telegram" and having child pornography on his phone. *Id.*, 6-7.

4. Glover participated in at least four different chat groups dedicated to the sexual exploitation of children on Telegram, which were accessible through computers and mobile devices. *Id.*, 7.

5. The Government seized thirteen electronic devices from Glover's residence which are being subjected to forensic examinations. *Id*.

6. The Government recovered 125 videos and images of child pornography saved on Glover's laptop and iPhone, which included depictions of infants and toddlers. *Id*.

7. The Government presented a substantial evidentiary proffer describing Glover's participation in an online community to exchange links and videos containing child pornography which uses encryption and other privacy-enhancing techniques to avoid detection by law enforcement. *Id*.

8. One of the locations where Glover stored child pornography was a sophisticated, encrypted Telegram chat room used by child exploitation offenders which the Government had to infiltrate to detect Glover's presence as a member. It was focused on especially young children, infants, and toddlers. *Id*.

9. Glover was apparently an administrator of one of the Telegram chat rooms where his fellow participants discussed methods to avoid law enforcement detection, and he was found to have "bolstered his bona fides" as a "true dad", since he actually was a non-custodial father of two children. *Id.*, 7-8.

10. Judge Howell found Glover used sophisticated and secure technology and applications "for a lengthy period of time" and was apparently "so deeply involved" in this depraved online community of like-minded men. *Id.*, 8.

The allegations against Mr. Willis pale by comparison to the Glover case.

While not attempting to minimize the allegations against Mr. Willis, the substantial proffer in Glover was dramatically more troubling, and extensive, and depicted a **long-term preoccupation** by Glover with **sexual depravity involving very young children**, **including infants**. He regularly participated in an organized group of like-minded men involved in **mutual sexual activity fueled by extremely depraved child pornography**. It involved **multiple victims, and videos depicting horrendous acts of sexual child abuse**. It was found by the Court to be **a long-standing preoccupation**. The proffer described caches of child pornography found in Glover's possession, his active and enthusiastic participation in encrypted chat rooms focused on sexually exploiting infants and toddlers, admissions by Mr. Glover, and extensive electronics and efforts to avoid law enforcement.

Judge Howell's analysis of factor 2, "Weight of the Evidence," similarly illustrates a significant distinction from Mr. Willis's case. There are no allegations as to Mr. Willis regarding his possession of child pornography, or of extensive electronics. There is no allegation of the use of encryption software to avoid law enforcement detection. There is no allegation of his participation in special chat room groups devoted to sexual exploitation of children. There is no allegation of his

participation with other males in mutual masturbation while watching videos depicting **infants being actively abused and subjected to fellatio and sexual intercourse by adult males**. There is no allegation against Mr. Willis indicating any proclivity toward sexual arousal by infants and toddlers. There are no allegations involving multiple alleged victims as in Glover. There is no allegation of involvement with any illicit activity "for a lengthy period of time," *supra*, as was the case in Glover. Unlike the case with Glover, there are no statements or admissions by Mr. Willis.

In the 'Weight of the Evidence" analysis for Mr. Willis's case, there is no allegation of any interaction with any other minor except the one alleged victim. This is not a case involving a chat room, but rather the "Snapchat" application, where users often receive random, and unsolicited pop-up messages from complete strangers, that can be ignored or explored. There are not only no statements made to law enforcement here, there are no statements at all attributed to Mr. Willis. The allegations describe someone using an electronic medium purportedly matched to Mr. Willis's subscriber information, communicating by text with the alleged victim. There are no recorded conversations, or audio transmissions, or any evidence of even a single conversation between Mr. Willis and the alleged victim. As far as the Complaint and Government's memorandum detail, there appears to be no photographic depictions of Mr. Willis's face in any of the chats or photos or videos purportedly sent by him.

The transcripts contained in the Complaint as well as in the Government's detention memo, depict a six-day period in April 2022 where Mr. Willis purportedly engaged in messaging and exchanging lewd pictures with the alleged victim. Then there are three days in May, 2022 where he purportedly engaged in similar activity with an undercover officer posing as the alleged victim. This constitutes neither extensive evidence, nor evidence of long-standing illicit activity. It is rather

insubstantial evidence, in comparison with the evidence proffered in the Glover case, which Judge Howell termed "overwhelming." *Id.*, 9.

Further distinction can be found in comparing factor 3 "History and Characteristics of the Person" between the Glover case and Mr. Willis's case. Judge Howell found as a serious counter to his otherwise long and stable career history, and commendable public life, that Glover was caught by agents, naked, and involved at 6 am with other males online, while videos were streaming to the group of masturbating men, which depicted the erect penises of adult males sexually engaging with infants, in their mouth and vagina! *Id.*

Lastly, in analyzing factor 4, the potential "Danger to the Community," Judge Howell took the totality of circumstances found as to factors 1 to 3, and added to them, that Mr. Glover's lead third-party custodian, his Aunt, was on remission from a serious illness, who admitted in earlier testimony, that she was unfamiliar with the mobile applications and technologies that Glover used to access child pornography. *Id.*, 11.  Despite a proposal to remove Glover's bedroom door, this did "not assuage the Court's concerns that defendant might continue to engage secretly in other exploitative acts, or communicate with individuals performing exploitative acts, in areas of Ms. Contee's home offering more privacy than his doorless bedroom, like a bathroom or other room with a door." *Id.*, 11. Such concerns would be misplaced in Mr. Willis's case. This is not just because he would share merely a one-bedroom, one-bath apartment with both of his parents. It is also because the totality of circumstances in his case are vastly less concerning than in the Glover case.

The allegations against Mr. Willis, even if assumed true, simply do not demonstrate as in Glover,  the depth and breadth of depravity and extensive and long-term involvement in sexual exploitation of minors, particularly infants and toddlers. Nor, as is the case in Glover, do the Willis allegations demonstrate the apparent obsession, preoccupation with, and sexual proclivity toward

5

infant children, or the participation in special groups, with special technology to thwart law-enforcement.

Jonathan Willis comes from a law-abiding, modest, and conservatively behaving family. He is utterly shocked and jolted by his arrest and incarceration in the D.C. Jail. Based on his demeanor during this counsel's several hours with him in the jail, the paucity of most all the concerning factors indicating future dangerousness that were present in <u>Glover</u>, and his parents reaction to this arrest, Jonathan Willis is deterred to his core. It is this counsel's impression, he will be "hyper-compliant" with all conditions of release imposed by the Court. His parents' immediate uprooting from their near life-long home in Kalamzoo, Michigan to indefinitely relocate to Bethesda, Maryland, indicate their commitment and desire to be reliable and trustworthy custodians. They have a vested interest in Jonathan's compliance with pretrial conditions and ensuring absolutely no misbehavior whatsoever. Jonathan's parents are appalled at the allegations against Jonathan in this case. They would not countenance the slightest indication of misbehavior from their son on their watch. They appear to be the unusual sort of people that would actually report Jonathan to the Pretrial Services Department, and return back to Michigan, if they saw any indication of his failure to comply with release conditions, and even the slightest indication of any contact with minors, or any inappropriate behavior at all. Even when Jonathan may be approved by PTS to leave out his apartment for a therapy appointment or legal appointment, he will be accompanied by at least one of his parents.

Jonathan's restriction to his home, on a 24-hour curfew, with electronic monitoring, GPS monitoring, with very limited and monitored computer use, his engaging in an immediate and comprehensive psychosexual evaluation, and immediate therapy, both with ATSA Clinical members, and other measures we suggested, will abundantly assure a *de minimis* risk of danger to the community.

ADDITIONAL ITEMS

We have attached as **Exhibit 1**- the Order of Detention in U.S. v Glover, as previously discussed. **Exhibit 2** is a letter from the President of the Interior Design company that Sherry Willis has worked for about 23 years. Ms. Leslie Thomas not only attests to the dependability of Sherry Willis for 23 years, but also to how Sherry and Jim Willis previously left their home to live with Sherry's mother and provide in-home care for seven years when the mother became paralyzed. **Exhibit 3** is the Discharge of Mortgage indicating the Willis's have paid off their mortgage in full to their home in Michigan. They are willing to post that home as collateral if the Court deems it necessary, to ensure Jonathan's appearance at trial. **Exhibit 4**- is the CV of Dr. Ronald I Weiner, Ph.D. **Exhibit 5** is some information about Clinical & Forensic Associates.

Dr. Weiner indicated today that due to his and his wife's high risk for COVID complications, he can no longer conduct an evaluation of Jonathan or anyone at the D.C. Jail. Dr. Weiner is in his 70's and his wife is immunocompromised from undergoing extensive treatment for bone marrow cancer.

CONCLUSION

Allegations in Mr. Willis's case involving recent and short-lived inappropriate contact with a singular, 14-year old girl are troubling for sure. His case is in an entirely different category, however, from the one alleged against Mr. Glover. The nature of the allegations in Glover, the weight of the evidence, his associations, his long-standing involvement in illicit behaviors, the physical activity he was seen engaging in, the physical evidence found in his possession, and the technology he employed to thwart detection, all result in a different calculus in terms of future dangerousness of Glover, compared with Mr. Willis. The two cases are significantly different, and they call for differing decisions with respect to pretrial release.

7

Respectfully submitted,

_____/S/_____
James N. Papirmeister, Esq.
Law Offices of James N Papirmeister, P.C.
8630 Fenton Street, Suite 320
Silver Spring, Maryland 20910
Offc (301) 589-2100; Cell (301) 367-6500
Fax (240) 444-8096
Email: criminalfirm@yahoo.com
DC Bar #421-366

## CERTIFICATE OF ELECTRONIC SERVICE

　　　This Memorandum in Support of Pretrial Release was filed on ECF this 21st day of June, 2022 and copies were electronically served on the Government.

_____/S/_____
James N. Papirmeister